UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHELLE WILCOX,

         Plaintiff,

                 **Hon. Hugh B. Scott**

       v.           **13CV994A**

                 **Report
                 and**
CAROLYN W. COLVIN, Acting      **Recommendation**
Commissioner of Social Security[1],

         Defendant.

   Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 11 (plaintiff), 13 (defendant)).

## INTRODUCTION

   This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

   The plaintiff ("Michelle Wilcox" or "plaintiff") filed an application for disability insurance benefits on June 5, 2012. That application was denied initially and on reconsideration. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated May 6, 2013, that the plaintiff was not disabled within

---

[1] On February 14, 2013, Carolyn W. Colvin became acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Colvin is substituted for the now former Commissioner Michael Astrue as defendant in this action; no further action is required, 42 U.S.C. § 405(g).

the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on September 18, 2013, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on October 2, 2013 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 11, 13). Responses were due June 9, 2014, reply by July 9, 2014 (Docket No. 12), and the motions were deemed submitted on July 9, 2014, without oral argument.

## FACTUAL BACKGROUND[2]

Plaintiff was born April 16, 1966, and has a bachelor's degree (R. 22). She worked as a barista, sales clerk, and assistant retail manager (R. 17, 22). At the time of her hearing, plaintiff worked part-time as a restaurant hostess but complained that the anxiety of the job that she could no longer perform it (R. 17). In her function report with her application, plaintiff stated that she lived alone, could care for her personal needs but had trouble buttoning and zipping her clothes (R. 17, 147-48). She stated that she had trouble lifting due to numbness in her hands and fingers, cannot stand long due to back pain, is out of breath when walking, cannot sit long because of cramps in her legs and knees (R. 17, 152). Plaintiff complained that her hands got stiff and her fingers got numb (R. 17, 153). She claimed that she had no problem getting along with people in authority (R. 17, 154). She said that "stress plays a huge role in my schedule" (R. 17, 155).

## MEDICAL AND VOCATIONAL EVIDENCE

Plaintiff complains of fibromyalgia, chronic obstructive pulmonary disease (COPD), Raynaud's phenomenon (arthritis, inflammation & discoloration of hands, vasospasm of parts of the hand in response to cold or emotional stress, causing reversible discomfort and color changes,

---

[2] References noted as "(R.__)" are to the certified record of the administrative proceedings.

Docket No. 13, Def. Memo. at 1 n.1), anxiety, and depression (R. 14).  Since there is no Social Security listing for fibromyalgia, the ALJ used the framework of Listing 14.02, systemic lupus erythematosus, and found that plaintiff did not meet this requirement (R. 15).  As for the COPD, the ALJ applied Listing 3.02, chronic pulmonary insufficiency, and found that she did not have FEV values equal to or less than 1.65 or chronic impairment of gas exchange, or significantly abnormal arterial blood gas values (R. 15).  As for her anxiety and depression, the ALJ found that her mental impairments singly or in combination did not meet or medically equal Listing 12.04 and 12.06, finding that the "paragraph B" criteria were not met (R. 15).  She had mild restrictions for activities of daily living, moderate difficulties in social functioning and concentration, persistence or pace, and that plaintiff had no episodes of decompensation, but without at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation (R. 15-16).  The ALJ also found that this record did not establish the presence of "paragraph C" criteria (R. 16).

   The ALJ found that plaintiff has a residual functional capacity to perform light work, but with limitations that she could perform simple tasks with occasional interaction with coworkers, supervisors, and the public; that she should avoid concentrated exposure to dust, fumes, gases, odors, and other respiratory irritants (R. 16).  The ALJ concluded that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible (R. 17).  The ALJ found that there was no evidence of trigger points or other evidence of fibromyalgia (R. 21).  As for plaintiff's claimed mental impairments, the ALJ found that, while plaintiff had a long history of anxiety and depression, she also ignored physicians' advice on numerous occasions, was inconsistent in taking her medication, and failing to seek follow up

3

treatment (despite insurance coverage issues) (R. 21).   The ALJ declined to give weight to the opinion of treating nurse practitioner Merlin and Dr. Bennett's December 11, 2012, report as being totally inconsistent with the rest of the medical record, because the record showed plaintiff seeing Merlin only four times and not seeing Dr. Bennett (R. 22).

The ALJ concluded that plaintiff could not return to her past relevant work as a barista, sales clerk, or assistant retail manager since they require more than occasional contact with others (R. 22).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence.   See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).   Substantial evidence is defined as "'more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her]

previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment.  Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); Poupore v. Astrue, 566 F.3d 303, 305-06 (2d Cir. 2009) (Docket No. 13, Def. Memo. at 18).  Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform."  Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

> (1) whether the plaintiff is currently working;
>
> (2) whether the plaintiff suffers from a severe impairment;
>
> (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
> (4) whether the impairment prevents the plaintiff from continuing past relevant work; and
>
> (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467.  If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir.

1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982) ("SSR"); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, plaintiff contends that the ALJ failed to make a proper credibility assessment. The ALJ did not properly consider other source opinion. Plaintiff argues that her fibromyalgia was not properly evaluated and all of her severe impairments were considered. (Docket No. 11, Pl. Memo. at 11-25.) Defendant responds that the ALJ's decision that plaintiff is not disabled was supported by substantial evidence (Docket No. 13, Def. Memo. at 13-14).

I. Plaintiff's Credibility

The ALJ found that plaintiff's complaints regarding numbness in her hands and her fibromyalgia were not fully credible (R. 16; see Docket No. 11, Pl. Memo. at 12-13). Her stated

condition was countered by a single examination by the consultative examiner, Dr. Donna Miller, who found her dexterity was intact (Docket No. 11, Pl. Memo. at 12-13; R. 22, 372). The ALJ then noted that plaintiff failed to seek treatment and take medication consistently (R. 21).

Plaintiff argues that fibromyalgia "often evades these clinical findings and varies greatly over time" (Docket No. 11, Pl. Memo. at 13).

The ALJ then found that plaintiff's claimed difficulties are inconsistent with her hobbies of reading and doing crosswords (R. 22; Docket No. 11, Pl. Memo. at 14). Plaintiff contends that she only attempts to read and do crossword puzzles, but with difficulties (Docket No. 11, Pl. Memo. at 14); R. 151).

Defendant responds that the ALJ properly assessed plaintiff's credibility, pointing to plaintiff's activities she performed in her daily life despite her claimed disabling pain and depression and her treatment history (or the lack of continuous treatment) (Docket No. 13, Def. Memo. at 23-24).

The record here shows that plaintiff was not limited in her daily activity due to fibromyalgia. Plaintiff, despite her claims, did not seek follow up treatment. The ALJ noted that plaintiff lived alone, performed light household chores, fed and walked her pets, and was limited in buttoning and zipping her clothes (R. 17; see R. 157). She says that she has trouble for lifting due to numbness in her fingers and hands; she cannot sit long due to cramping (R. 17; see R. 155-57). This is the extent of her non-medical evidence of her limitations due to this condition.

II.     Source Opinions

Next, plaintiff faults the ALJ for giving no weight to the favorable opinion of treating counselor Doreen Nuessle, a social worker from Suburban Psychiatric Associates, for her

depression and post-traumatic stress disorder (Docket No. 11, Pl. Memo. at 17). The ALJ rejected Nuessle merely because she was a social worker and the lack of evidence of post-traumatic stress disorder found by Nuessle (R. 22; cf. R. 324; Docket No. 11, Pl. Memo. at 17). First, plaintiff argues that the ALJ failed to apply the six factors under SSR 06-03p for evaluating Nuessle's opinion as from acceptable medical sources (Docket No. 11. Pl. Memo. at 15), see Tolliver v. Astrue, No. 12CV42, Docket No. 20, Order at 6 & n.3 (W.D.N.Y. Jan. 7, 2013) (Skretny, Ch. J.). Plaintiff focuses on Nuessle's finding as to her depression, diagnosed by medical professionals, rather than the post-traumatic stress disorder (Docket No. 11, Pl. Memo. at 17). Plaintiff points to a series of traumatic events in her life (her grandfather's death, her daughter's cancer diagnosis, her divorce, and the onset of her own medical conditions) that would support a post-traumatic stress disorder ("PTSD") finding (id.). Furthermore, the ALJ did not develop the record to obtain psychotherapy notes in this record (id.).

Defendant points out that the ALJ properly relied upon the findings and opinions of consultative Dr. Susan Santarpia (Docket No. 13, Def. Memo. at 19; R. 20, 365-69), and the state agency psychiatric consultant, Dr. H. Tzetzo (Docket No. 13, Def. Memo.at 19; R. 20, 22, 394). Defendant argues that the opinions plaintiff relies upon were inconsistent with the rest of the medical record and that the ALJ could disregard Nuessle's opinion since it did not come from an acceptable medical source (Docket No. 13, Def. Memo. at 21-22).

SSR 06-03p requires the ALJ to apply factors to weigh opinion evidence from a non-acceptable medical source to determine if it outweighs the opinion of acceptable medical source, see Toliver, supra, No. 12CV42, Order at 6. Reviewing Nuessle's notes (R. 324-30), Nuessle does not indicate the basis for her PTSD diagnosis. But plaintiff's record is consistent

8

with a diagnosis of depression. This matter should be remanded for the ALJ to weigh the factors regarding Nuessle's opinion.

III. Evaluation of Plaintiff's Fibromyalgia

The ALJ did not evaluate plaintiff's fibromyalgia without considering SSR 12-2p (effective July 25, 2012) which considers fibromyalgia as a medically equivalent to Listing 14.09D, for inflammatory arthritis (Docket No. 11, Pl. Memo. at 19). Instead, the ALJ applied Listing 14.02 to plaintiff's condition and found that the requirements of systemic lupus erythematosus were not met (R. 15) and that there were no records of physical examinations to support this diagnosis (R. 21). Plaintiff argues that the ALJ did not evaluate her fibromyalgia at step 3 and failed to consider the physical and mental impact of that ailment at step 5 of the analysis (Docket No. 11, PL. Memo. at 19-20). The ALJ did not consult a vocational expert and applied Medical-Vocational Rule 202.21 to deny her claim (id. at 20).

Defendant contends that the ALJ did consider plaintiff's impairments and found that they did not meet or equal listing requirements (Docket No. 13, Def. Memo. at 15-16, 18). Defendant notes that the ALJ focused on plaintiff's fibromyalgia (id. at 16-7).

Plaintiff was encouraged to exercise that would be compromised by fibromyalgia (R. 285, Mar. 2, 2011, examination) by Dr. Karen Krutchick. Dr. Krutchick alternatively asserted that plaintiff's daily activities were "unlimited" (R. 278, 283, 285 (examinations in May 25, 2012, Aug. 29, 2011, and Mar. 2, 2011); Docket No. 13, Def. Memo. at 17) or were "limited" (R. 282 (Dec. 11, 2011, examination daily activities were "limited"), 286 (Sept. 15, 2010, examination also "limited") without a clear indication in the medical record why the evaluation changed. Defendant misreads the record that plaintiff exercised when Dr. Krutchick advised exercise while

9

noting that plaintiff's fibromyalgia was deteriorating.  The ALJ argues that there were no records of actual physical examinations (R. 21) but Dr. Krutchick notes in her reports that she saw plaintiff in the office for the various appointments (R. 278-88).  It is not clear what more the ALJ was seeking from this physician, where defendant later argues that Dr. Krutchick provided "extensive treatment notes" (Docket No. 13, Def. Memo. at 23).

The medical record for plaintiff's fibromyalgia should be re-evaluated when this case is remanded for depression.

IV.     Evaluation of Medical Opinions

If the ALJ fails properly to evaluate a medical source opinion, Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987), or if the factors are not clearly applied, Featherly v. Astrue, 793 F. Supp. 2d 627, 631 (W.D.N.Y. 2011) (Larimer, J.), the matter should be remanded (Docket No. 11, Pl. Memo. at 21).  As found by Judge Larimer in Featherly, "in determining what weight to give a treating physician's opinion, the Commissioner must consider: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the treating physician's opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the opinion is offered by a specialist," 793 F. Supp. 2d at 631 (citing five factors of 20 C.F.R. § 404.1527(d))

Here, the ALJ gave no weight to the opinions of Dr. Richard Bennett and psychiatric nurse practitioner Melissa Merlin or social worker Nuessle for plaintiff's depression (R. 22, 400; Docket No. 11, Pl. Memo. at 22), since the ALJ found their opinions to be inconsistent with the medical record and internally inconsistent with the Suburban Psychiatric Associates treatment records (R. 22).  Instead, the ALJ gave greater weight (R. 22) to the opinion of consultative psychiatric

evaluator, Dr. Susan Santarpia, Ph.D. (Docket No. 11, Pl. Memo. at 22-23; R. 365), who opined that she had depressive disorder and anxiety disorder (R. 368). Plaintiff contends that Merlin and Dr. Bennett's opinions were consistent with Nuessle's opinion, and rheumatologist Dr. Krutchick noted plaintiff's severe depression (Docket No. 11, Pl. Memo. at 22; R. 278, 282, 283). Regarding Dr. Bennett as never treating her, plaintiff argues that he at least supervised the treatment by Merlin and Merlin's opinion should be evaluated under SSR 06-03p as the opinion of the treating counselor (Docket No. 11, Pl. Memo. at 22). She then faults the ALJ from relying heavily upon Dr. Santarpia without using the statutory six factors to evaluate that opinion (id.).

Defendant argues that the ALJ properly relied upon the finding of consultative physician Dr. Santarpia (Docket No. 13, Def. Memo. at 19; R. 365-69; 20) and properly discounted the opinions of Dr. Bennett, Merlin, and Nuessle as being inconsistent with the rest of the medical record (Docket No. 13, Def. Memo. at 20). The ALJ attempted to obtain records from plaintiff's treating sources, Ms. Nuessle and Merlin, and there were no obvious gaps in the record to compel the ALJ to seek more materials (R. 174; Docket No. 13, Def. Memo. at 22).

While focusing somewhat on factors three and four (the evidence to support their opinions and their consistency with the rest of the medical record), the ALJ merely discounts the evidentiary support by relying upon its consistency with the rest of the record. With the remand recommended above for plaintiff's fibromyalgia, the opinions regarding her depression also should be reconsidered.

V.     Plaintiff's Other Severe Impairments

Plaintiff concludes that ALJ failed to find her bilateral knee injury to be a severe impairment treated by Dr. Thaddeus Szarzanowicz (Docket No. 11, Pl. Memo. at 23, 24; R. 17-18,

256-57).  Plaintiff faults the ALJ in relying upon Dr. Miller's finding that plaintiff had full range of motion (Docket No. 11, Pl. Memo. at 25).

Defendant argues that the ALJ properly considered, and thus rejected, plaintiff's knee impairment because plaintiff had not provided treatment notes for her knee during her claimed disability period (R. 242-57, 371-72; Docket No. 13, Def. Memo. at 14).

The ALJ found that plaintiff had follow up treatment on her knee and, in February 2011, she had no complaints and was later encouraged to exercise with repetitive movement such as cycling, and by her October 2011 appointment had seen slight improvement (R. 18, 252, 242). Plaintiff claims the onset of her disability in May 2012 and produced no proof that her knee worsened in that year.   Therefore, the ALJ correctly denied that plaintiff's knee was an impairment in 2012 for disability coverage.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **reversed** and this matter be **REMANDED** for further administrative proceedings, particularly on the issue of plaintiff's depression and fibromyalgia.  Defendant's motion for judgment on the pleadings (Docket No. 13) should be **denied** and plaintiff's motion for similar relief in her favor (Docket No. 11) should be **granted**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within fourteen (14) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).  <u>Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein.</u>**  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>F.D.I.C. v. Hillcrest Associates</u>, 66 F.3d 566 (2d Cir. 1995); <u>Wesolak v. Canadair Ltd.</u>, 838 F.2d 55 (2d Cir. 1988).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **<u>Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.</u>**

So Ordered.

*s/Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
October 16, 2014